IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMIAH F. KANE and LOUISE W. KANE, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 18-1894 |
| CHESTER COUNTY, | : | |
| PENNSYLVANIA, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**TIMOTHY R. RICE**                                                                 **April 26, 2019**
**U.S. MAGISTRATE JUDGE**

Plaintiffs Jeremiah and Louise Kane have filed an amended complaint alleging that

Defendant Chester County, Pennsylvania, and Individual Defendants, Douglas Waegel, Gerald

Dowdall, and Jane Doe, in their individual and official capacities, violated Jeremiah Kane's civil

rights, defamed him, and invaded his privacy when they refused to renew his employment

contract.  The Kanes also allege that Defendants are liable to Louise Kane for loss of consortium.

Defendants move to dismiss the Kanes' amended complaint, asserting their claims fail as a

matter of law.  See Motion to Dismiss (doc. 19).  Defendants' motion is granted.

I may dismiss a complaint for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6).  I must construe the complaint in the light most favorable to Kane.

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).  I then must: (1) note the

elements Kane must plead to state a claim; (2) identify any allegations that are mere conclusions,

not entitled to an assumption of truth; and (3) assume the veracity of well-pled factual allegations

and determine whether they plausibly give rise to a claim for relief.  Id. at 221 (quoting Santiago

v. Warminister Twp., 629 F.3d 121, 130 (3d Cir. 2010)).  A claim is plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Id. When the complaint does not state a plausible claim for relief, the motion to dismiss should be granted. See id.

Kane alleges he is a Pennsylvania attorney who has practiced law for over 35 years, primarily advocating on behalf of abused and neglected children. Am. Compl. ¶¶ 2, 22. In approximately 1992, the Chester County Department of Children, Youth, and Families ("CYF") hired Kane as a *guardian ad litem*, pursuant to a renewable one-year at-will contract. Id. ¶ 23. CYF renewed this contract every year for approximately 20 years and the majority of Kane's work came from this contract. Id. ¶¶ 25–26. Kane "developed a friendly camaraderie with many of his peers and the CYF employees with whom he worked . . . including Gerald 'Gerry' Dowdall, a CYF supervisor with whom Mr. Kane worked closely on multiple *guardian ad litem* cases." Id. ¶ 28.

In 2009, Kane was appointed to serve as a *guardian ad litem* for two young brothers. Id. ¶ 32. Approximately one year later, Kane learned that the boys were being abused in their foster home and that CYF employees failed to notify Kane of the abuse. Id. ¶¶ 33-35. In November 2012, Kane, as *guardian ad litem* for the boys, filed a civil rights action against Chester County and certain CYF caseworkers and supervisors ("the 2012 Lawsuit"). Id. ¶ 36.

When Kane's contract was up for renewal the following May, CYF refused to renew the contract without providing a reason. Id. ¶ 40. Kane discussed the issue with the then-President Judge of the Chester County trial court, who reached out to CYF. Id. ¶¶ 41-42. CYF subsequently agreed to renew Kane's contract. Id. ¶¶ 43-44.

CYF renewed Kane's contract each of the next three years as the 2012 Lawsuit continued.  Id. ¶ 46.  In August 2016, the lawsuit settled.  Id. ¶ 47.  Waegel, the then-acting director of CYF, was present at the court hearings and settlement conferences.  Id.

On May 5, 2017, Waegel sent Kane a letter notifying him that his contract would not be renewed after it ended on June 30, 2017.[1]  Id. ¶¶ 50-51, Ex. A, 5/5/2017 Letter ("May 5 Letter").[2]  Waegel stated that the decision was based on the "following conduct, which the County views as unethical, unprofessional, and harassing, and which has potentially subjected the County to liability":

1. Leaving four harassing telephone voice-mails to a CYF supervisor in which you impersonated a County employee (in violation of Section 4912 of Title 18) and gave instruction to that employee which you were not authorized to give;

2. Leaving four harassing telephone voice-mails to a CYF supervisor which had the effect of impeding that employee from discharging his duties;

3. Leaving four harassing telephone voice-mails to a CYF supervisor while engaged in your position as *guardian ad litem* and while in court on a County/GAL matter for which you submitted invoices for payment to the County, and;

---

[1]    In his brief, Kane asserts this was the first time his contract was up for renewal after the 2012 Lawsuit settled.  Pl. Resp. (doc. 23) at 4, 20–21.  Kane, however, does not include this fact in his Amended Complaint.

[2]    In deciding this motion to dismiss, I may consider any documents attached as exhibits to Kane's complaint or undisputed documents upon which Kane bases his claims.  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

4. Engaging in conduct (set forth above) which calls into serious question your judgment and ability to act in the best interest of the children you serve.

May 5 Letter at 1. Waegel asked Kane to "cease and desist from the harassing conduct expressed above as to any CYF employee." Id. He also stated that Kane would not be assigned additional cases, his current cases would be reassigned, and CYF would shred his confidential juvenile files. Id. at 2.

Waegel included "a packet of [relevant] information" with the May 5 Letter. Id. at 1. The first document was a transcript of three "[v]oicemails to Gerry Dowdall of CYF." Id., Attachment, Voicemails. The callers alleged they were employees of the Chester County Parking Authority or the Traffic Parking Compliance Department and accused Dowdall of speedy and careless driving in County parking facilities. Id. The transcriptions stated:

#1

Mr. Dowdall, this is Tom Jenkins. I talked to you a couple of months ago. I am from the County Parking Authority and we have another report of your speedy driving, your careless driving at approximately 12:15 PM today, Thursday. I believe at this point we're gonna have to ask you not to park in the county facilities anymore. If you'd like to discuss this we will be sending you the paperwork to file an appeal but pending the appeal we ask you to park in the roads of West Chester, not in our facilities due to your dangerous driving. If you'd like to give a call, my office at the courthouse is in the basement and the extension is 6867. Again, Tom Jenkins.

#2

Mr. Dowdall, this is Robert Snodgrass of the Parking Authority of Chester County. It's about twenty after four on my timepiece. We understand again there's been a violation at the parking garage. You were cited previously. I do need you to call back and discuss this issue. Why don't I give you the office at the county building, 610-344-6867. You know it doesn't have to happen this way. We are really asking you is to slow down a little. Alright. Let's work this out before we get into fines and costs. Thank you. Good-bye.

#3

Mr. Dowdall, Tom Jenkins again calling from the Traffic Parking Compliance Department. We did observe additional behavior today. I would like a phone call back. You can try the parking extension program at 6983 and we have some things to discuss and I'm sorry it's come to this point. Tom Jenkin here, 6983. Thank you.

Id.

Waegel also included video images of Kane in the hallway of the Chester County courthouse on March 2, 2017. Am. Compl. ¶ 72, Attachment at 3/2/2017 Video Images. In one image, Kane is walking through the hall and in other images, Kane appears to be on a telephone or looking at cell phone. 3/2/2017 Video Images.

The last document was a copy of an April 11, 2017 email from Waegel to a county solicitor with a subject line of: "FW: Incidents re: prank phone calls to GD." Id., Attachment at 4/11/2017 Email ("April 11 Email"). In the top email, Weagel informed the solicitor that he had

"highlighted the dates and times [of the phone calls] in yellow below." <u>Id.</u> He then forwarded an email allegedly sent to him by Doe, in which she stated that she asked Dowdall for the dates and times of the phone calls and included information sent to Dowdall from a CISCO United Connection telephone system about voicemails on December 1, 2016, March 2, 2017, and April 3, 2017, two of which are marked urgent and of high importance. <u>Id.</u>

Approximately one week after receiving the May 5 letter, Kane "reached out to President Judge Jacqueline Carroll Cody for aid." <u>Id.</u> ¶ 91. He asked for "reconsideration of the letter terminating [his] duties as a [*guardian ad litem*] for the children of Chester County." <u>Id.</u>, Ex. B, 5/12/2017 Email. He explained that his "actions of the phone calls did not meet the actions that were discussed in that letter," and he believed "CYF is again trying to terminate my employment status for fighting for my clients and for trying to do what is right." <u>Id.</u> Judge Cody spoke with the county solicitor about the termination of Kane's contract, but CYF would not reconsider its decision. <u>Id.</u> ¶ 92, Ex. B, 6/8/2017 Email.

Around the same time, Kane wrote to the Deputy Director of the Chester County Department of Procurement and General Services to reapply for the *guardian ad litem* contract. <u>Id.</u> ¶ 90, Ex. B, 5/24/2017 Letter. Kane never received a response to this letter. <u>Id.</u> ¶ 90.

On June 14, 2017, Kane attended a dependency hearing before a master as the *guardian ad litem* for a client. <u>Id.</u> ¶¶ 95-96. "In the midst of the hearing, the opposing solicitor for CYF suddenly stopped the hearing in order to speak [by telephone] with someone from CYF," whom Kane alleges was Doe. <u>Id.</u> ¶¶ 98, 100. Following the call, the solicitor stated Kane "needed to be removed from the court room because he was no longer a *guardian ad litem* (despite the contract still being in effect per Defendant Waegel's letter), and thus could not be present for the

confidential hearing." Id. ¶ 99.  The master "chastised" the solicitor and allowed Kane to continue representing his client during the hearing.[3]  Id.

Kane alleges that the May 5 Letter has been placed in his "personnel file, and thus will always exist to impede his legal career and tarnish his reputation." Id. ¶ 120.  He further contends that the Individual Defendants publicly disseminated the statements in the May 5 Letter to other people, including the secretary who typed the letter, the county solicitor who received the April 11 Email, and multiple lawyers, court staff, and clients "who came to learn of [his] firing." Id. ¶ 119.  Kane asserts that "members of the Chester County family law community came under the false impression that Mr. Kane was fired for some sort of alleged impropriety and misconduct far beyond mere prank calls." Id. ¶ 94.  Attorneys who were assigned his cases "expressed confusion and dismay over the rumors they had heard about Mr. Kane's firing, as did the clients who suddenly found themselves with a new attorney, forcing Mr. Kane to confer with approximately half-a-dozen other attorneys about allowing him time to explain and confer with his clients before turning over his files to them." Id. ¶ 105.

After Kane's contract ended, CYF delayed paying Kane for outstanding work and ultimately paid him at a reduced rate.  Id. ¶¶ 107-09.

I.      Violation of Kane's Procedural Due Process Rights by Waegel, Dowdall, and Doe

Kane asserts Waegel, Dowdall, and Doe, in their individual and official capacities, deprived him of his liberty interest in his reputation without procedural due process in violation of 42 U.S.C. § 1983, by publishing false and defamatory statements in the May 5 Letter, the April 11 Email, and through their course of conduct.  See Am. Compl., Count I, ¶¶ 116-27.  The

_____

[3]      Kane requested a transcript of this hearing, but Chester County has objected to Kane's request, asserting the transcript is confidential.  Am. Compl. ¶ 102.

Individual Defendants contend this claim must be dismissed because Kane fails to allege sufficient facts to show they publicly made false and defamatory statements without the protection of a privilege.

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). This claim, thus, is often referred to as a "stigma plus claim." Id. at 234. For the stigma prong, the plaintiff must allege the defendant publicly made false and defamatory statements. Id.; see also Paul, 424 U.S. at 709 (stigma results from the defamatory character of the statement); Ersek v. Twp. of Springfield, 102 F.3d 79, 83–84 (3d Cir. 1996) ("government action first must involve a publication that is substantially and materially false"). For the plus prong, the plaintiff must allege that the defamatory statements were made in connection with the deprivation of an interest in a job. Hill, 455 F.3d at 237-38 (citing Paul, 424 U.S. at 709-10, Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)). Lastly, the plaintiff must have been denied "a name-clearing hearing." Hill 455 F.3d at 236, 239; Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."); Ersek, 102 F.3d at 84 ("The principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name.").

Statements are defamatory if they damage a person's good name, reputation, honor, or integrity on the basis of false information. See Roth, 408 U.S. at 573; Ersek, 102 F.3d at 83-84; see also 12th Street Gym, Inc. v. Gen. Star Indem. Co., 93 F.3d 1158, 1163 (3d Cir. 1996) ("In

Pennsylvania, 'a statement is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter third persons from associating or dealing with him.") (citing Kryeski v. Schott Glass Techs., 626 A.2d 595, 600 (Pa. Super. 1993)).[4] A statement of opinion is defamatory if it implies that it is based on undisclosed or false facts because the listener is unable to evaluate the soundness of the opinion. See Redco Corp. v. CBS, Inc., 758 F.2d 970, 972 (3d Cir. 1985); Lees v. West Greene Sch. Dist., 632 F. Supp. 1327, (W.D. Pa. 1986). In contrast, when a person offers an opinion supported by true facts, that opinion is not defamatory, "no matter how derogatory or unreasonable the statements may be in regard to those facts," because listeners can "choose to accept or reject it on the basis of an independent evaluation of the facts." Redco, 758 F.2d at 972; see also Rockwell v. Allegheny Heath, Educ. & Research Found., 19 F. Supp. 2d 401, 405-06 (E.D. Pa. 1998) (citing Green v. Mizner, 692 A.2d 169, 174 (Pa. Super. 1997) and Restatement (Second) Torts § 566).

Publication of defamatory matter generally requires communication to someone other than the person being defamed. See Agriss v. Roadway Express, Inc., 483 A.2d 456, 463 (Pa. Super. 1984); McCleester v. Mackel, No. 06-120J, 2008 WL 821531, at *23 (W.D. Pa. Mar. 27, 2008). A publisher, however, may escape liability where the publication was protected by a privilege and the publication remains within the scope of the privilege. See Agriss, 483 A.2d at 463; Pasqua, 721 Fed. App'x at 219. "It is a question of law whether privilege applies in a given

---

[4] Courts consider state defamation law in deciding whether a plaintiff has established publication of a defamatory statement for a stigma plus claim. See Cooley v. Pa. Hous. Fin., 830 F.2d 469, 473–74 (3d Cir. 1987), abrogated on other grounds, Foster v. Chesapeak Ins. Co., 933 F.2d 1207 (3d Cir. 1991); Pasqua v. Cty. of Hunterdon, 721 Fed. App'x 215, 219 (3d Cir. 2017); Gilson v. Pennsylvania State Police, 175 F. Supp. 3d 528, 550, 553 n.16 (W.D. Pa. 2016), aff'd, 676 Fed. App'x 130 (3d Cir. 2017); Paterno v. City of New York, No. 17-8278, 2018 WL 3632526, *4 (S.D.N.Y. July 31, 2018).

case, but a question of fact for the jury whether a privilege has been abused." <u>Agriss</u>, 483 A.2d at 463.

A. The May 5 Letter

Kane alleges that Waegel made the following defamatory statements in the May 5 Letter: (1) describing Kane's conduct as "unethical, unprofessional, and harassing"; (2) stating Kane's conduct "has potentially subjected the County to liability"; (3) stating Kane's impersonation of a County employee violated a criminal statute;[5] (4) stating Kane's calls "had the effect of impeding" Dowdall "from discharging his duties"; (5) stating Kane made these calls while engaged in his position as a *guardian ad litem* and while in court for a matter for which he submitted invoices;[6] and (6) stating Kane's conduct called "into serious question [his] judgment and ability to act in the best interest of the children you serve." May 5 Letter; <u>see also</u> Kane's Resp. (doc. 23) at 16-17; Am. Compl. ¶ 118.

These statements must be viewed in the context in which they were presented: as a private letter to Kane with several supporting documents. <u>See</u> <u>Gilson</u>, 175 F. Supp. 3d at 551;

---

[5]     Waegel cited to the statute for impersonating a public servant, 18 Pa. C.S. § 4912. <u>See</u> May 5 Letter. This statute states a person commits "a misdemeanor of the second degree if he falsely pretends to hold a position in the public service with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice." Kane asserts this accusation was defamatory because he did not have "the requisite intent for impersonating a (non-existent) public official." Pl. Resp. at 14. Waegel, however, opined differently based on the documents included with the May 5 Letter and his opinion that Kane violated the statute, based on those disclosed facts, was not defamatory. <u>See</u> <u>infra</u> at 10-12.

[6]     Kane describes this statement differently than it is presented in the May 5 Letter. <u>Compare</u> Pl. Resp. at 17 ("Stating that Mr. Kane made these calls while performing his duties as *guardian ad litem* and submitting invoices for payment for that time, which constitutes a blatant accusation of fraud."), <u>with</u> <u>supra</u> at 3–4 (citations from May 5 Letter). I must review the statement as presented in the letter. There, Waegel does not accuse Kane of submitting invoices for the phone calls. Rather, he states Kane made the phone calls while in court for a case for which he submitted invoices. <u>See</u> May 5 Letter.

Baker v. Lafayette Coll., 532 A.2d 399, 402 (Pa. 1987). In that context, it is clear the statements were opinions of Waegel, as the acting CYF Director, about the facts disclosed in the documents included with the letter.[7] See Redco Corp., 758 F.2d at 972-73 (claim that tire rims were dangerous and manufacturers were unethical were expressions of opinion based on disclosed facts); Brown v. Montgomery Cty., 470 Fed. App'x 87, 90-91 (3d Cir. 2012) (statements that employee committed malfeasance, damaged the public's confidence in the county, and violated county codes were not defamatory as based on disclosed facts); Wolgin v. Smith, No. 94-7471, 1996 WL 745285, at *3 (E.D. Pa. Dec. 19, 1996) (claims that defendant was not trustworthy and a crook were "clearly statements of opinion" as they were made in the context of a business dispute about which all parties were aware, "and thus were based on clearly disclosed facts"), aff'd, 135 F.3d 768 (3d Cir. 1997); Lees, 632 F. Supp. at 1333-34 (statement that plaintiff's conduct was improper and inappropriate was an opinion based on plaintiff's undisputed behavior); Goralski v. Pizzimenti, 540 A.2d 595, 599 (Pa. Commw. 1988) (manager's letter explaining termination for misconduct was an opinion based on facts disclosed within letter).

Kane contends the statements were assertions of fact because they were isolated and not expressly qualified as "opinions." Pl. Resp. at 18. These are not the defining characteristics of an opinion. Instead, a statement may be deemed an opinion so long as it constitutes "a view, judgment, or appraisal formed in the mind about a particular matter." Opinion Definition, https://www.merriam-webster.com/dictionary/opinion (last visited 4/12/2019); see also Wolgin,

---

[7]     Kane admits Waegel's statement that the County viewed his conduct as "unethical, unprofessional, and harassing" appears to be an opinion, but contends it is actually a "position imputed by Defendant Waegel to the entire county." Pl. Resp. at 17. Whether the statement was an opinion or position is a distinction without a difference. Further, because Waegel made the statements on County letterhead as the Acting Director of the CYF, he was entitled to express the opinions or position of the County. See, e.g., Hitchens v. Montgomery Cty., 278 Fed. App'x 233, 236 (3d Cir. 2008).

1996 WL 745285, at *3 ("A simple expression of opinion occurs when [a person] expresses a comment as to the person's conduct, qualifications or character after either stating the facts on which he bases his opinion or when both parties to the communication know the facts or assume their existence.").

Moreover, Kane does not dispute the accuracy of the facts disclosed in the documents with the May 5 Letter, i.e., that he made the transcribed telephone calls to Dowdall and that the video footage shows him in the courthouse. See Am. Compl. ¶¶ 60, 63, 72-73. Instead Kane disputes Waegel's opinions about those facts, insisting his own opinions are more accurate. See id. ¶¶ 61 (phone calls were "innocuous, friendly jests"), 64 (voicemails were "so absurd on [their] face as to clearly be fictitious and not even remotely capable of being believed by any reasonable person"), 65 ("Dowdall knew or should have known these calls were merely friendly jokes made by [Kane]"). Although I may agree with Kane that his phone calls appeared to be in jest, this difference in opinion cannot make Waegel's statements defamatory. See Agriss, 483 A.2d at 463 ("Statements which represent difference of opinion or are annoying or embarrassing, are without more not libelous.") (citing Bogash v. Elkins, 176 A.2d 677 (Pa. 1962)). Because Waegel presented the facts that he believed supported his opinions in the May 5 Letter and because Kane knew of those facts and does not dispute them, those opinions were not defamatory and cannot support Kane's stigma plus claim.

Even if the statements made in the May 5 Letter could be deemed defamatory, Kane's allegations show that some of their publication was privileged. An "employer has an absolute privilege to publish defamatory matters in notices of employee termination" to an employee and relevant supervisory personnel. Momah v. Albert Einstein Med. Ctr., 978 F. Supp. 621, 634–35 (E.D. Pa. 1997). Thus, publication of the letter to Kane and any relevant supervisory personnel

12

was privileged. This privilege also was not abused because the Letter was allegedly typed by a secretary. See Am. Compl. ¶¶ 50, 119-20; Daywalt v. Montgomery Hosp., 573 A.2d 116, 123 (Pa. Super. 1990) ("Incidental publication to a secretary . . . in the course of preparing [the termination] notice is not an abuse of the privilege."). Similarly, the privilege was not abused based on Kane's bald allegation that the letter was placed in his personnel file where it "will always exist to impede his legal career and tarnish his reputation."[8] Am. Compl. ¶ 120; see also Agriss, 483 A.2d at 464 (privilege protects placing a copy of warning letter in personnel file).

Kane's stigma plus claim based on the publication of the May 5 Letter to him, relevant supervisory personnel, and a secretary, as well as the placement of the letter in his personnel file is dismissed with prejudice.

B. April 11, 2017 Email

Kane also alleges that the April 11, 2017 Email sent by Waegel to a county solicitor contained defamatory statements. See Am. Compl. ¶¶ 78–80, 118. The email, however, could not be defamatory because it did not refer explicitly or implicitly to Kane. See April 11 Email; Paterno v. Pennsylvania State Univ., 688 Fed. App'x 128, 133 (3d Cir. 2017) (statements were not defamatory when they did not refer to Appellants explicitly or implicitly); Redco, 758 F.2d at 972 ("party defamed need not be specifically named [so long as] pointed to by description or circumstances tending to identify it"). Even if there was a connection to Kane once the email

---

[8] Kane needed to allege facts to explain why and how his career and reputation will be impacted by the inclusion of the letter in his personnel file. See Iqbal, 556 U.S. at 678 (complaint must allege more than bald conclusions or naked assertions without factual support); see also Perri v. Aytch, 724 F.2d 362, 367 (3d Cir. 1983) (employee could show stigma if employer was likely to share false statements in personnel file with potential future employers); Brandt v. Bd. of Cooperative Educ. Servs., 820 F.2d 41, 44 (2d Cir. 1987) (employee's claim that prospective employers will gain access to his personnel file was sufficient to raise issue of fact regarding improper publication).

was included with the May 5 Letter, the email did not contain any false or defamatory statements.  Although the email refers to "prank calls," Kane admits the calls were just that.[9]  See Am. Compl. ¶¶ 63 (discussing how he jokingly made the calls), 94 (referring to calls as "prank calls"); see also Gilson, 175 F. Supp. 3d at 551 (true statements were not defamatory).  Sending the email to the county solicitor for the purposes of investigating the calls also was privileged.[10]  Tucker v. Merck & Co., 102 Fed. App'x 247, 253–54 (3d Cir. 2004) (conditional privilege applies to communications "made on a proper occasion, from a proper motive, and in a proper manner" to a person with a common interest in the subject matter).

Kane's stigma plus claim based on the publication of the April 11 Email is dismissed with prejudice.

C.  Rumors and Statements at June 2017 Dependency Hearing

Lastly, Kane alleges that the Individual Defendants defamed him through their course of conduct, including by spreading rumors about his firing and seeking his removal during the June 2017 dependency hearing.  See Am. Compl. ¶¶ 93–94, 98–100, 105, 118–19.

Kane baldly alleges that the Individual Defendants disseminated the statements in the May 5 Letter to "the multiple lawyers and court staff who came to learn of his firing, the half-a-dozen lawyers to whom [his] cases were being reassigned far in advance of the contract expiration date, the clients who found themselves suddenly with new counsel because [he] was

_____

[9]  Alternatively, describing the phone calls as "prank calls" was a nondefamatory opinion based on undisputed facts disclosed in the email, i.e., the three voicemails left for Dowdall by Kane.  See April 11 Email; Redco Corp., 758 F.2d at 972.

[10]  Kane argues that any privilege connected to the email was abused because the Individual Defendants acted in bad faith.  See Resp. at 15; see also Tucker, 102 Fed. App'x at 254 (privilege can be abused if publication is actuated by malice or negligence).  Kane, however, fails to allege facts showing how the Individual Defendants acted in bad faith in relation to publishing the email.

abruptly removed from their case as if he could not be trusted, and the multiple witnesses to the

exchange in-between breaks at the June 14, 2017 hearing in which CYF attempted to bar [him]

from participating because he could not be trusted with confidential information." Id. ¶ 119.

Although publication of the opinions in the May 5 Letter to lawyers, court staff, and clients,

without disclosure of the underlying undisputed facts may have been defamatory and not

privileged, Kane fails to allege sufficient facts to show the Individual Defendants made such a

publication. See Redco, 758 F.2d at 972 (statements of opinion may be defamatory if based on

undisclosed facts); see also Am. Compl. ¶¶ 93 (alleging members of the Chester County legal

community learned of his firing and "expressed surprise, confusion, and concern to [him]"), 94

(alleging "[u]pon information and belief, members of the Chester County family law community

came under the false impression that [he] was fired for some sort of alleged impropriety and

misconduct far beyond mere prank calls"). Kane must be more specific about when, where, and

how the statements in the May 5 Letter were disseminated, i.e., whether the underlying facts

about the undisputed phone calls were provided along with the statements.[11]  See Reed v.

Chambersburg Area Sch. Dist. Found., No. 1:13-CV-00644, 2014 WL 1028405, at *6 (M.D. Pa.

Mar. 17, 2014) (Rumors do not "necessarily implicate the constitutional rights of the aggrieved,

and they must be pled with specificity."); see also Minielly v. ACME Cryogenics, Inc., No. 15-

---

[11]     Kane contends that his vague allegations of rumors are sufficient to proceed at this stage
based on Povish v. Pennsylvania Dep't of Corrs., No. 13-0197, 2014 WL 1281226, *5 (E.D. Pa.
Mar. 28, 2014). See Pl. Resp. at 12–13. Although the Povish court held that the plaintiff's
rumor allegations were sufficient to withstand a motion to dismiss, the plaintiff there alleged that
the rumors and gossip occurred after a specific defendant published several false statements,
including that he had committed or was suspected of sexual misconduct, he could become an
inmate in the prison, and he had been defrocked. 2014 WL 12812226, at *1, *5; see also Povish,
No. 13-0197, Civil. Dkt., Compl. (doc. 1), ¶ 47 (personnel and coworkers heard these false
statements, including that he "had been taken out in handcuffs"). Kane has failed to allege that
rumors heard by others were based on false and unsupported statements published by the
Individual Defendants.

6164, 2016 WL 1221640, *7 (E.D. Pa. Mar. 28, 2016) (dismissing defamation count where plaintiff failed to state when, where or how information was communicated); Wright v. Lehigh Valley Hosp. & Health Network, No. 10-431, 2011 WL 2550361, *3 (E.D. Pa. June 23, 2011) (allegations pled upon information and belief should have a proper factual basis).

Further, although Kane asserts that the rumors are supported by the incident during the June 14 hearing when the county solicitor incorrectly stated he needed to be removed because he was no longer a *guardian ad litem*, Am. Compl. ¶ 94, Kane does not allege that the solicitor stated or suggested the reasons for the termination of his contract, id. ¶¶ 98–99.[12] Kane also admits that the solicitor was chastised for her statements and he was allowed to continue with the hearing.[13] Id. ¶ 99. Regardless, any statements made at the June 14 hearing were privileged as they were made in the course of a judicial proceeding.[14] See Richmond v. McHale, 35 A.3d 779, 784 (Pa. Super. 2012) (statements made by attorneys "in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation").

Kane's stigma plus claim based on the incident in the June 14 hearing is dismissed with prejudice. Kane's claim based on alleged rumors is dismissed without prejudice.[15] See

---

[12] Similarly, although Kane also alleges that CYF began reassigning his cases before his contract expiration date, he does not allege that the Individual Defendants ever said or suggested to the new attorneys why Kane's contract was terminated. See Am. Compl. ¶¶ 104-05.

[13] The inaccuracy of these statements also was not so harmful as to require a name-clearing hearing. See Ersek, 102 F.2d at 84-85 (stigma plus claim properly dismissed where false statements could not have caused harm that could be corrected by name-clearing hearing).

[14] Kane seems to argue that the judicial privilege cannot apply because the solicitor stopped the meeting before asking for Kane to be removed. See Pl. Resp. at 14. The statements, however, were still made in the course of the proceeding. See Richmond, 35 A.3d at 784.

[15] The Individual Defendants also argue that Kane's stigma plus claim should be dismissed because he does not allege that he requested a name-clearing hearing. I disagree.

Minielly, 2016 WL 1221640, at *7 (dismissing count without prejudice where plaintiff could add averments to satisfy pleading burden). Kane has 30 days to amend this portion of his § 1983 claim by alleging more specific facts about how, when, and where the statements in the May 5 Letter were communicated to attorneys, court staff, and clients.

II.     Conspiracy Among Individual Defendants to Retaliate Against Kane

Kane also alleges that the Individual Defendants, in their individual and official capacities, conspired to retaliate against him for attending and testifying as a party and witness in the 2012 Lawsuit in violation of 42 U.S.C. § 1983(2). Am. Compl. ¶¶ 138–46. The Individual Defendants contend this claim must be dismissed because Kane fails to allege facts to support a conspiracy or show a retaliatory motive.

Section 1983(2) proscribes persons from conspiring to retaliate against any party or witness for attending and/or testifying in a court proceeding. See 42 U.S.C. § 1985(2); Haddle v. Garrison, 525 U.S. 121, 124–25 (1998); Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976). To succeed on this claim, Kane must allege facts that tend to show a conspiracy or agreement

---

The United States Court of Appeals for the Third Circuit has not specifically addressed whether a plaintiff must allege that he requested a name-clearing hearing for a stigma plus claim. See Hill, 455 F.3d at 237 n.18 (although it was unclear whether plaintiff plead that he requested name-clearing hearing, "we have not held that he was required to do so"). Although this Court has held that such an allegation is required, it also has found that a plaintiff's request to review an employer's decision relating to the defamatory charges may be sufficient to meet this burden. See Green v. Street, No.10-4529, 2011 WL 2517144, *5–*6 (E.D. Pa. June 22, 2011) ("Whether or not Plaintiff actually intended to request a name-clearing hearing through the letter or any other communication with Defendants is an issue of fact that cannot be resolved at this stage of the litigation."); see also Rosenstein v. City of Dallas, Texas, 876 F.2d 392, 396 (5th Cir. 1989) (request to participate in review procedures sufficiently encompassed request for name-clearing hearing). Kane alleges that he spoke with and wrote to the presiding court judge for reconsideration of CYF's decision. See Am. Compl. ¶¶ 91–92, Ex. B, 5/12/2017 Email ("I know my actions of the phone calls did not meet the actions that were discussed in the letter"). These allegations are sufficient at this stage to raise an issue of fact as to whether Kane requested an opportunity to clear his name.

between two or more persons or entities to retaliate against him for his participation in the 2012 Lawsuit.  See Suber v. Guinta, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012); Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992) ("plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred"), aff'd 980 F.2d 722 (3d Cir. 1992).  To show a retaliatory motive, Kane must allege some adverse action by the members of the conspiracy causally connected to his participation in the 2012 Lawsuit.  See, e.g., Blakney v. City of Philadelphia, 559 Fed. App'x 183, 185 (3d Cir. 2014) (retaliation under Title VII requires adverse action causally connected to protected action); Wantanabe Realty Corp. v. City of New York, 315 F. Supp. 2d 375, 399–400 n.138 (S.D.N.Y. 2003) (applying Title VII retaliation standard to 1985(2) claim); Oaks v. City of Fairhope, Alabama, 515 F. Supp. 1004, 1041 (S.D. Ala. 1981) (same).  This causal connection may be established by a temporal proximity between the two events and/or other circumstantial evidence, such as ongoing antagonism or inconsistent actions by the Individual Defendants.  See Blakney, 559 Fed. App'x at 185-86.

Kane cannot bring claims of conspiracy against the Individual Defendants in their official capacities as CYF employees because employees of the same governmental authority are considered one entity and thus, cannot engage in a conspiracy.  See Dubrey v. SEPTA, No. 11-4679, 2014 WL 4631987, at *7 (E.D. Pa. Sept. 16, 2014); Burden, 16 F. Supp. 2d at 573.  Although Kane may maintain a claim against the Individual Defendants in their individual capacities, he fails to provide sufficient factual allegations to support this claim.

Kane alleges the conspiracy amongst the Individual Defendants is shown by the April 11 Email, in which Waegel, Dowdall, and Doe "openly and expressly discuss punishing [him] for his phone calls to Defendant Dowdall, and characterize the obviously innocuous, friendly jests

18

Mr. Kane believed he was making with a friend as 'urgent' and of 'high importance.'" Am. Compl. ¶ 141. This is an inaccurate characterization of the email. The Individual Defendants do not discuss punishing Kane or anyone else in the email. Rather, Dowdall and Doe simply note the dates and times of the voicemails left on Dowdall's work phone.[16] See April 11 Email; supra at 5–6. Thus, this email cannot provide factual support for Kane's claim that the Individual Defendants had an agreement to retaliate against him for the 2012 Lawsuit.

Kane also asserts the conspiracy is shown from CYF's previous attempt to terminate his contract in 2013. Id. ¶ 142. Kane, however, does not allege that the Individual Defendants were involved in that attempted termination. Thus, that attempt does not establish some ongoing agreement by the Individual Defendants to retaliate against him. See Burden v. Wilkes-Barre Area Sch. Dist., 16 F. Supp. 2d 569, 573 (M.D. Pa. 1998) (dismissing Section 1985 conspiracy where assertions of conspiracy were "devoid of any factual support showing the role of the defendant or any 'communication, consultation, cooperation or command'").

Kane also fails to sufficiently allege a causal connection between the termination of his contract and his participation in the 2012 Lawsuit. The 2012 Lawsuit settled in August 2016 and Kane learned about the termination of his contract nine months later in May 2017. This is not temporally proximate to suggest a retaliatory motive. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation"); Blakney, 559 F. App'x at 186 ("temporal proximity greater than ten days requires supplementary evidence of retaliatory motive"). Further, Kane fails to allege any ongoing antagonism or other

---

[16] It is clear from the email that voicemails were marked as urgent or high importance by the CISCO phone system. See April 11 Email. Regardless, such markings fail to show a conspiracy to retaliate against Kane.

circumstantial evidence to suggest that the Individual Defendants had a retaliatory motive to terminate his contract. Instead, Kane alleges that "[f]ollowing the aborted attempt to not renew his contract in 2013, [his] contract [was] consistently renewed without issue for the following three years, and thus [he] had no expectation or reason to believe that 2017 would be any different." Am. Compl. ¶ 49.

Because Kane has presented all the facts relevant to the sequence of events surrounding the 2012 Lawsuit and the subsequent termination of his contract and there is nothing more he can add to establish a conspiracy to retaliate by the Individual Defendants, Kane's Section 1985 claim against the Individual Defendants in their official and individual capacities is dismissed with prejudice.[17]

III.    Violation of Civil Rights Pursuant to Section 1983 by Chester County

Kane alleges Chester County violated his constitutional right to his liberty interest in his reputation by failing "to adequately train and supervise" the Individual Defendants. Am. Compl. ¶ 134. Kane further contends that Chester County had an "accepted custom, policy, and practice of allowing CYF . . . to act unconstitutionally without regard for the rights of others" and "of allowing CYF to act without appropriate oversight and without regard for the rights of its *guardian ad litem* employees." Id. ¶¶ 135-36. Because this claim is dependent on Kane's § 1983 claim, which Kane has failed to properly plead, it also must be dismissed without

---

[17]    The Individual Defendants also are entitled to qualified immunity on Kane's federal claims unless Kane amends his complaint, as permitted with regard to Kane's stigma plus claim, to plead facts showing a constitutional violation of his liberty interest that was clearly established at the time of the violation. See Ashcroft v. al-Kidd, 563 U.S 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.").

prejudice.[18]  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (local government is

liable for constitutional violation only where result of governmental policy or custom); Noviho v.

Lancaster Cty., 683 Fed. App'x 160, 166 (3d Cir. 2017) (upholding dismissal of Monell claim

because it depended on existence of underlying substantive constitutional violation, which was

not properly pled); Blakney v. City of Philadelphia, 559 Fed. App'x 183, 187 n.5 (3d Cir. 2014)

(dismissing Monell claim because it was derivative of plaintiff's "untenable retaliation claim").

If Kane amends his Section 1983 claim as allowed, he also may reassert this claim as

appropriate.

IV.     Defamation by Individual Defendants

        Kane alleges that the Individual Defendants defamed him based on the libelous

statements and innuendo included in the May 5 Letter, which was published to Kane, the

secretary who transcribed the letter, and other individuals in Chester County.  Am. Compl. ¶¶

149–52.  For the reasons discussed with regard to Kane's stigma plus claim, this claim is

dismissed with prejudice with respect to any publication of the May 5 Letter to Kane,

supervisory employees, and the secretary who transcribed the letter.  See supra at 10–13; see also

42 Pa. C.S. § 8343.  This claim is dismissed without prejudice as to any alleged dissemination of

---

[18]     Kane also fails to allege sufficient facts to show that Chester County engaged in a pattern
or practice of violating its employees' reputational interests such that it should be liable for
failing to train its employees.  See Connick v. Thompson, 563 U.S. 51, 61–62 (2011)
(municipality's failure to train its employees must amount to "deliberate indifference to the rights
of persons with whom the [untrained employees] come into contact" and a pattern of similar
constitutional violations by untrained employees is "ordinarily necessary" to demonstrate such
deliberate indifference).  Although Kane alleges the County attempted to terminate his contract
in 2013, he does not allege that the County violated his reputational interest at that time.  The
County also ultimately did not terminate his contract then.  For similar reasons, Kane fails to
allege sufficient facts to show the County had a well-settled custom of violating its employees'
reputational rights.

the May 5 Letter to other persons in Chester County.  See supra at 14–17.  Kane has 30 days to amend this portion of his claim.

V.      False Light by Individual Defendants

Kane asserts that the Individual Defendants invaded his privacy by publicly placing him in a false light as a result of their accusations in the May 5 Letter, their investigation of the voicemails, their removal of his cases, and their conduct during the June 14 dependency hearing. Am. Compl. ¶ 158.

To establish a claim for false light, Kane must show the Individual Defendants published private facts that placed him in a false light.  Puchalski v. Sch. Dist. of Springfield, 161 F. Supp. 2d 395, 410 (E.D. Pa. 2001); Curran v. Children's Serv. Ctr. of Wyoming Cty., 578 A.2d 8, 12 (Pa. Super. 1990).  The facts must represent "a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position."  Curran, 578 A.2d at 13.  The misrepresentation also must be communicated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Id. at 12; see also Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 1385 (Pa. Super. 1984) (communication to group of seventeen individuals is large enough to constitute publicity).

This claim is dismissed with prejudice concerning the Individual Defendants' actions with respect to the investigation into the voicemails and the June 14 dependency hearing because these actions did not involve a major misrepresentation of Kane's character or publication to a broad audience.  See supra at 13–14, 16.  This claim is dismissed without prejudice as to Kane's claim that the Individual Defendants disseminated the statements in the May 5 Letter to lawyers, court staff, and clients.  Although this broader publication may have been sufficient to support a

claim of false light, Kane fails to allege sufficient facts to show that the statements constituted a major misrepresentation of his character and activities.  See supra at 10–12, 14–16.  Kane may amend this claim in 30 days by alleging more specific facts as to who, when, and where the statements were made by the Individual Defendants.

VI.     Loss of Consortium by Louise Kane Against All Defendants

Lastly, Kane's wife, Louise Kane, brings a claim for loss of consortium against all defendants, asserting that their actions have deprived her of Kane's companionship, affection, society, moral support, and solace.  Am. Compl. ¶ 167.  This claim depends upon Kane's right to relief and is not cognizable with regard to Kane's federal claims.  See Balletta v. Spadoni, 47 A.3d 183, 201 (Pa. Commw. 2012) ("loss of consortium claim is a derivative claim, which hinges on the success of the underlying claim of the spouse"); see also Brennan v. Palmieri, No. 07-4364, 2008 WL 2355203, at *5 (D.N.J. June 4, 2008) (spouse's claim for loss of consortium under Sections 1983 and 1985 are not cognizable).   Thus, this claim is dismissed with prejudice as to any loss of consortium by Mrs. Kane related to Kane's federal claims.  This claim is dismissed without prejudice as to any loss of consortium related to Kane's state law claims.  This claim may be amended within 30 days along with any amendment to Kane's state law claims.

An appropriate order follows.